UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
GARY LA BARBERA, et al.,

          Plaintiffs,

   - against -

CYN-KEN DRIVER SERVICE CO., INC.,

          Defendant.
--------------------------------------------------------X

**R E P O R T  A N D
RECOMMENDATION**

06 CV 4445 (CPS)

Plaintiffs, Trustees of Local 282 of the International Brotherhood of Teamsters Welfare,

Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds (the "Funds"), filed

this action on August 21, 2006 against defendant Cyn-Ken Driver Service Co., Inc. ("Cyn-Ken"),

pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§

1001-1461 ("ERISA"), seeking to compel Cyn-Ken to submit to an audit of its books and records

and, if the audit shows that there were contributions owed, to recover those delinquent

contributions owed to the Funds, along with interest, liquidated damages, and attorneys' fees and

costs.  In the alternative, if defendant has failed to maintain the proper records necessary to

conduct an audit and calculate contributions, plaintiffs seek to collect an estimated amount of

contributions calculated according to the formula set forth in the Funds' Agreement and

Declaration of Trust ("Trust Agreement"), along with interest, liquidated damages, and attorneys'

fees and costs.

     When defendant failed to file an answer or otherwise move with respect to the Complaint

in a timely manner, the Clerk of the Court entered a default with respect to this action on

February 21, 2007. By Order dated July 6, 2007, the Honorable Charles P. Sifton, United States District Judge, referred the matter to the undersigned to determine whether entry of a default judgment is appropriate, and to conduct an inquest on damages.

## FACTUAL BACKGROUND

According to the Complaint, plaintiffs are trustees of multi-employer benefit plans that provide fringe benefits to employees performing services within the jurisdiction of Local 282 of the International Brotherhood of Teamsters (the "Union"). (Compl.[1] ¶¶ 5,7; Cody Decl.[2] ¶ 2). Defendant is a New Jersey corporation located at #2 Melissa Lee Drive, Jackson, New Jersey and a signatory to a Collective Bargaining Agreement with the Union (the "CBA") from September 6, 2004 through June 30, 2006. (Compl. ¶¶ 8, 9; Cody Decl. ¶ 6, Exs. B, C). Pursuant to the CBA and the Trust Agreement, defendant was required to pay fringe benefit contributions to the Funds based on work performed by the individual employees of defendant. (Cody Decl. ¶¶ 2, 3, 8, Exs. A-C). The CBA also requires employers to submit remittance report forms and to allow plaintiffs to examine and audit the pertinent payroll books and records of the employer to insure that the proper number of hours are credited to the individual employees. (Id. ¶¶ 4, 5; Compl. ¶ 11).

By letter dated April 28, 2006, plaintiffs were notified by their auditors that Cyn-Ken had failed to respond to the auditors' request that it provide its books and records so that an audit

---

[1]Citations to "Compl." refer to plaintiffs' Complaint, dated August 21, 2006.

[2]Citations to "Cody Decl." refer to the Declaration of Theresa Cody in Support of Plaintiffs' Request for a Default Judgment, dated February 7, 2007, and exhibits thereto.

could be performed for the period beginning September 6, 2004 to the date of the Complaint. (Compl. ¶ 13; Cody Decl. ¶ 14). Thereafter, by letter dated June 2, 2006, plaintiffs' counsel demanded that Cyn-Ken respond to the Trustees' request for an audit. (Compl. ¶ 14). Although Cyn-Ken has submitted remittance reports for the months of September 2004 through January 2006, Cyn-Ken's continued failure to submit to an audit constitutes a breach of the CBA and the Trust Agreement. (Cody Decl. ¶ 17; Compl. ¶ 15).

On August 21, 2006, plaintiffs filed this action seeking an Order compelling Cyn-Ken to submit to an audit and to pay any delinquent contributions, plus interest, liquidated damages, audit fees, and attorneys' fees and costs as authorized by 29 U.S.C. § 1132(g)(2). In the alternative, if Cyn-Ken has failed to maintain its records as it was required to do by ERISA and the CBA, plaintiffs requested an award of estimated delinquent contributions calculated in accordance with the formula set forth in the Trust Agreement, along with interest, liquidated damages, audit fees, and attorneys' fees and costs.

When defendant failed to answer the Complaint, plaintiffs filed a request for entry of a default judgment. The request for default judgment and any issue as to damages was referred to this Court by Order dated July 6, 2007. On that same date, this Court Ordered the parties to submit additional papers on this matter by August 6, 2007. On August 1, 2007, plaintiffs submitted a letter in response indicating that they would submit no additional papers, but to date defendant has failed to respond.

A. Default Judgment

1) Standards

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). As a threshold issue, Rule 55 sets forth a two-step process that first requires the entry of a default through a notation on the record that the party has defaulted, and then entry of a default judgment, which is the final action in the case. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, by notation of the party's default on the clerk's record of the case. See id.

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). Although an application for entry of default should be made before a motion for entry of default judgment, courts will generally excuse a failure to obtain entry of default before the motion for default judgment is made. See, e.g., Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981); Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *1-2 (S.D.N.Y. Oct. 19, 1992) (citations omitted). Here, plaintiffs submitted a request for both entry of default and default judgment on February 16, 2007. The clerk of court entered a default on February 21, 2007.

In determining whether a default judgment should enter, courts have cautioned that a

default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d at 277. While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubts should be resolved in favor of the defaulting party." Id. Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established" and "the amount of money potentially involved" – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (3d ed. 1998).

2) Application

Having reviewed the prior proceedings in the current case, this Court respectfully

recommends that default judgment be entered against defendant. The Complaint clearly sets

forth facts establishing a claim that the defendant violated Sections 209 and 515 of ERISA, as

well as various provisions of the CBA and Trust Agreement. Section 209 of ERISA requires an

employer to "maintain records with respect to each of his employees sufficient to determine the

benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). Under

Section 107 of ERISA, these records must be "available for examination for a period of not less

than six years. . . ." 29 U.S.C. § 1027. Section 515 of ERISA states:

> Every employer who is obligated to make
> contributions to a multiemployer plan under the terms
> of the plan or under the terms of a collectively
> bargained agreement shall, to the extent not
> inconsistent with law, make such contributions in
> accordance with the terms and conditions of such plan
> or such agreement.

29 U.S.C. § 1145. Consistent with Section 209 of ERISA, Article IX(1)(d) of the Trust

Agreement, which is incorporated explicitly into the CBAs, provides that "[t]he Trustees [of the

Funds] may at any time audit the pertinent books and records of any Employer in connection

with" the employer's contributions to the Funds. (Cody Decl. ¶¶ 10, 11, Exs. A-C).

Here, plaintiffs have alleged that Cyn-Ken, as an employer, was obligated under the CBA

with the Union to submit remittance reports, to pay contributions to the Funds, and to provide the

Funds' auditors with all pertinent books and records as requested. (Compl. ¶¶ 10, 11, 15, 16).

The Court finds that the allegations that defendant has failed to comply with its contractual

6

obligations and with the statutory requirements of ERISA are sufficient to state claims on which relief is warranted.

Additionally, it is beyond dispute that defendant is in default. Not only has the defendant not responded to the motion for judgment and permanent injunction, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"), but the company has not obtained counsel. Such a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (noting the well settled law that a corporation cannot appear without an attorney); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Further, the amount of money involved in this case is not great, unlike a case in which there are potentially millions of dollars involved. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143 at *2 (deciding that default judgment will not enter because plaintiff's damages request ran well into the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Despite the Trustees' letter requesting an audit, the Complaint, the motion for entry of default, and this Court's Order setting dates for the submission of papers in connection with this inquest, defendant has not appeared in this action and has not disputed the plaintiffs' allegations in this case. Accordingly, this Court respectfully recommends that default judgment be granted against defendant Cyn-Ken.

## B. Default Judgment Damages

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552, 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (internal citations omitted). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. ContiCommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, where the plaintiffs have filed reasonably detailed declarations and exhibits pertaining to the damages incurred, and where the defendant has failed to make an appearance in the case, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

## C. Relief Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). See also Iron Workers Dist. Council of W. New York and Vincinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-08 (2d Cir. 1995).

## D. Injunction

Plaintiffs seek an Order requiring defendant to comply with the CBA, the Trust Agreement, and ERISA, by submitting to an audit of the relevant books and records from September 6, 2004 to the present. (Compl. ¶ 19). In addition, plaintiffs seek an award of attorneys' fees and costs incurred in obtaining the audit. (Id.)

Injunctive relief is appropriate under Section 1132(g)(2)(E) of ERISA, which states that

in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); see Beck v. Levering, 947 F.2d 639, 641-42 (2d Cir. 1991), cert. denied, 504 U.S. 909 (1992); Lanzafame v. L & M Larjo Co., Inc., No. 03 CV 3640, 2006 WL 2795348, at *9 (E.D.N.Y. Sept. 26, 2006) (citing cases); King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996). In a case such as this, where defendant is in default and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, which include a showing of "'irreparable harm should the injunction not be granted.'" King v. Nelco Indus., Inc., 1996 WL 629564, at *1 (quoting Haitian Ctrs. Council, Inc. v. McNary, 969 F.2d 1326, 1338 (2d Cir. 1992), vacated as moot, 509 U.S. 918 (1993)).

In this case, where defendant has defaulted, as in King v. Nelco Indus., Inc., and has further refused to submit to the requested audit, plaintiffs have provided the Court with sufficient evidence "that defendant intends to frustrate any judgment . . . or show 'contempt for the judicial process.'" Id. (internal citations omitted). Thus, this Court recommends that plaintiffs' request for an order requiring defendant to submit to an audit within 30 days of the date of an Order adopting this Report and Recommendation be granted.

If defendant complies with the Order to submit to an audit, then this Court respectfully recommends that the matter be referred to the undersigned to consider any request for delinquent contributions determined through the audit to be due and owing, along with any requests for interest and liquidated damages. Pursuant to the governing Trust Agreement and Section 515 of ERISA, the Court also respectfully recommends that attorneys' fees and costs be awarded in

10

pursuit of this injunction, as discussed <u>infra</u> at 16-20.

E. <u>Damages</u>

If defendant fails to comply with the Court's Order or has not maintained records sufficient to determine contributions due and owing for the audit period, then plaintiffs have requested that the Court award damages consistent with the provisions of the Trust Agreement. (Compl. ¶ 29). Specifically, Article IX(1)(e) of the Trust Agreement provides that to the extent that an employer has failed to submit the required remittance reports and fails to submit books and records requested for any month during the period of an audit, the Funds are entitled to contributions calculated by multiplying the current rate of contribution to each of the Funds by 110% of the number of hours for the month in which the largest number of hours were reported in the prior twelve reports submitted by the employer. (Cody Decl. ¶ 15, Ex. A; <u>see also</u> Novick Decl.[3] ¶ 7). To the extent that the employer has submitted the remittance report for any month during the audit period but fails to supply books and records for that month, then Article IX(1)(f) of the Trust Agreement provides that the Funds are entitled to an additional sum equal to the current rate of contributions to each of the Funds, multiplied by 50%[4] of the number of hours

---

[3]Citations to "Novick Decl." refer to the Declaration of Adam Novick in Support of Plaintiffs' Request for an Award of Contributions and Damages Against Defendant Cyn-Ken Driver Service Co., Inc., dated February 12, 2007.

[4]The Cody Declaration, as well as the Feldman and Novick Declarations, incorrectly state this percentage as 150% (Cody Decl. ¶ 16; Feldman Decl. ¶ 17; Novick Decl. ¶ 6), but reference to the Trust Agreement indicates that 50% is the correct multiplier. (Cody. Decl., Ex. A p. 29 ("In the event the Employer submits the required remittance reports, but thereafter such Employer fails to submit the pertinent books and records for audit . . . the Trustees and/or their agents may compute the additional contributions due for any month by taking 50 percent of the number of hours reported for that month and then multiplying said number of hours by the

11

reported for that month. (Cody Decl. ¶ 16, Ex. A; <u>see also</u> Novick Decl. ¶ 6).

According to Article IX, Section 3 of the Declaration of Trust, which governs the various Funds in this action, the employer is also obligated to pay certain designated late charges whenever the employer fails to report and pay contributions. (Cody Decl., Ex. A). Pursuant to the Trust Agreement, interest on unpaid contributions is calculated at 18% per annum for the months of September 6, 2004 through February 23, 2007. (Novick Decl. ¶ 13; Cody Decl., Ex. A). In addition, where contributions remain unpaid at the time of commencement of the suit, plaintiffs are entitled to the greater of interest owed or liquidated damages calculated at the rate of 20% of the delinquency, plus reasonable attorneys' fees. (Cody Decl., Ex. A). The Court therefore respectfully recommends that plaintiff be awarded delinquent contributions and late fees, as discussed below.

## F.  Calculation of Default Judgment Damages

### 1)  Delinquent Contributions

In their application, plaintiffs seek delinquent contributions owed to the Funds for various time periods as calculated by Adam Novick, an auditor with the accounting firm of Abrams, Herde and Merkel, LLP ("AHM"). (Novick Decl. ¶ 1). According to his Declaration, because Cyn-Ken refused to submit to an actual audit, Mr. Novick was asked by the Funds to perform an estimated audit of Cyn-Ken for the period of September 2004 through December 2006. (<u>Id.</u> ¶¶ 8-11). Cyn-Ken had submitted remittance reports for the period January 2004 through January 2006, but failed to submit reports for the period of February 2006 through the present. (<u>Id.</u> ¶ 10;

current contribution rate.")).

Cody Decl. ¶ 17).

Accordingly, Mr. Novick prepared an estimate of contributions owed for the period for which reports had been submitted – September 2004 though January 2006 – based on the formula set forth in Article IX(1)(f) of the Trust Agreement, by multiplying by 50% the number of hours reported for each month in that period and then multiplying that amount by the contribution rates that were current at the time of the estimate. (Novick Decl. ¶ 10, Ex. A[5]). Mr. Novick also estimated the contributions owed for the period for which no reports had been submitted – February through December 2006 – based on the formula set forth in Article IX(1)(e) of the Trust Agreement, by multiplying by 110% the number of hours for the month in which the largest number of hours was reported and then multiplying that amount by the aforementioned contribution rates. (Id., Ex. A[6]). For the period of September 6, 2004 through December 31, 2006, Mr. Novick calculated an amount owed in unpaid contributions of $35,209.92. (Id. ¶ 11, Ex. A).

_____

[5]The Novick Declaration incorrectly states that the 110% formula was used to calculate the contributions due for this period, whereas the Trust Agreement calls for, and Mr. Novick's actual calculations reflect, the 50% formula. (Novick Decl. ¶ 10, Ex. A; Cody Decl., Ex. A).

[6]Though the Novick Declaration does not contain a statement reflecting these calculations, it is apparent from the accompanying audit that Mr. Novick used this formula.

| FUND | HOURS | CONTRIBUTIONS RATE | AMOUNT OWED |
|------|-------|--------------------|-------------|
| Welfare | 1,318.60 | $8.95 | $11,801.47 |
| Pension | 1,318.60 | $7.00 | $9,230.20 |
| Annuity | 1,318.60 | $7.6525 | $10,090.59 |
| Job Training | 1,318.60 | $0.10 | $131.86 |
| Vacation Sick Leave | 1,318.60 | $3.00 | $3,955.80 |
| TOTAL OWED | | | $35,209.92 |

(See Novick Decl. ¶ 11, Ex. A).

Having reviewed the Novick Declaration, the remittance reports attached thereto, and the calculations performed in accordance with the formulas set forth in the Trust Agreement, the Court finds that defendant owes plaintiffs a total of $35,209.92 in delinquent contributions. The Court notes that to date, defendant has not challenged these figures or objected in any way to plaintiffs' estimates.

Accordingly, if defendant fails to comply with the Court's Order to submit to an audit, it is respectfully recommended that plaintiffs be awarded $35,209.92 in delinquent contributions.

2) Interest

In addition to seeking an award of delinquent contributions, plaintiffs also seek an award of interest accrued during the period of delinquency through February 23, 2007 in the amount of $4,677.54. (Novick Decl. ¶ 13). Under the terms of the Trust Agreement and 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to an award of interest for the period of delinquency. (Cody

Decl., Ex. A; see also Pls.' Mem.[7] at 2-3).  The CBA and the Trust Agreement provide for

interest to be calculated at the rate of 18% per annum for the period of September 2004 forward.

(Pls.' Mem. at 2-3; Novick Decl. ¶ 13; Cody Decl., Ex. A).

Based on the estimate prepared by Mr. Novick, the amount of interest owed on the

delinquent contributions for each Fund is as follows:

### INTEREST

| FUND | INTEREST OWED |
|------|---------------|
| Welfare | $1,567.80 |
| Pension | $1,226.21 |
| Annuity | $1,340.49 |
| Job Training | $    17.53 |
| Vacation/Sick Leave | $   525.51 |
| TOTAL | $4,677.54 |

Having reviewed the Novick Declaration and supporting documentation, plaintiffs'

calculation of interest appears to be accurate, and this Court accordingly respectfully

recommends that plaintiffs be awarded $4,677.54 in interest for the periods of delinquency.[8]

---

[7]Citations to "Pls.' Mem." refer to Plaintiff's Memorandum of Law in Support of Plaintiffs' Motion for a Default Judgment, dated February 16, 2007.

[8]The Court notes that pursuant to 29 U.S.C. § 1132(g)(2) and the Trust Agreement, plaintiffs are entitled to additional interest, calculated at the rates approved in this Report and Recommendation, up to the date that judgment is entered.  Indeed, in their Memorandum of Law, plaintiffs requested an additional amount in daily interest of $1.39, representing the interest accrued between the date of Mr. Novick's Declaration and the date of judgment. (Pls.' Mem. at 1-2).  Rather than recommending the interest beyond the date calculated in Mr. Novick's Declaration because the date that judgment will be entered is not yet known, the Court

3) Liquidated Damages

Plaintiffs also seek $7,041.98 in liquidated damages. (Pls.' Mem. at 2). In keeping with 29 U.S.C. § 1132(g)(2)(C), Article IX(3)(d) of the Trust Agreement provides that plaintiffs are entitled to recover liquidated damages in the greater of the amount of the interest charged, or 20% of unpaid contributions. (Cody Decl., Ex. A). In this case, plaintiffs seek an award equal to 20% of the unpaid contributions, which is greater than the amount of interest.

Accordingly, it is respectfully recommended that plaintiffs' request for liquidated damages in the amount of $7,041.98 be granted.[9]


4) Audit Fees

Plaintiffs additionally request audit fees of $432.50 to compensate AHM for the work performed by Mr. Novick in preparing the estimated audit. (Pls.' Mem. at 2; Novick Decl. ¶ 14). Audit fees are available pursuant to Article IX(3)(b) of the Trust Agreement, and under Section 1132(g)(2)(E) of ERISA, which provides for "such other legal or equitable relief as the court

---

respectfully recommends an award of interest in the amount of $4,677.54 plus any additional interest that has accrued between the date of Mr. Novick's Declaration and entry of Judgment.

[9]Plaintiffs appear to argue that they are entitled to additional liquidated damages equal to the additional interest that accrues between the date of the Novick Declaration and the date that judgment is entered. (See Pls.' Mem. at 2, n.1). However, because plaintiffs seek liquidated damages in the form of 20% of the unpaid contributions, see id. at 2, and not in the form of the amount of interest accrued, per diem interest does not apply. See, e.g., Jacobson v. Decora Elec. Co., No. 05 CV 4812, 2007 WL 2071563, at *5 (E.D.N.Y. June 5, 2007) (awarding additional per diem interest on liquidated damages in the form of the amount equivalent to interest accrued); Bricklayers Ins. & Welfare Fund v. Topline Constr., Inc., No. 03 CV 0487, 2006 WL 3337509, at *5 (E.D.N.Y. Sept. 6, 2006) (awarding per diem interest as part of interest award but not as part of fixed percentage liquidated damages award); Trustees of Local 813 I.B.T. Ins. Trust Fund v. Bay Area Portables, Inc., No. 04 CV 1761, 2006 WL 1313819, at *4-5 (E.D.N.Y. May 9, 2006) (same).

deems appropriate." See Lanzafame v. L & M Larjo Co., Inc., 2006 WL 2795348, at *8 (citing cases); see also Martone v. HST Roofing, Inc., No. 03 CV 4165, 2007 WL 595054, at *4 (E.D.N.Y. Feb. 22, 2007) (awarding audit fees). Having reviewed the documentation submitted in connection with these proceedings, the Court finds this amount to be compensable and reasonable, and respectfully recommends that audit fees in the amount of $432.50 be awarded to plaintiffs.

## ATTORNEYS' FEES

Plaintiffs also request attorneys' fees and costs in the amount of $4,309.00[10] through February 16, 2007, representing services performed by counsel in connection with plaintiffs' efforts to obtain this judgment. (Feldman Decl.,[11] Ex. C). Pursuant to 29 U.S.C. § 1132(g)(2)(D) and the Trust Agreement, plaintiffs are entitled to an award of costs and disbursements, including reasonable attorneys' fees. (See Cody Decl., Ex A).

### A. Standard

In determining the amount of attorneys' fees due, the Court looks to what a reasonable client would be willing to pay to determine the "presumptively reasonable fee." See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162, 169 (2d Cir.), amended and superseded at - - - F.3d - - -, 2007 WL 2004106, at *7 (2d Cir. July 12, 2007)

---

[10]In addition to the $3,659.00 requested for attorneys' fees, plaintiffs seek an additional $650.00 in costs and disbursements, exclusive of the audit fees. (Feldman Decl. ¶ 31, Ex. D).

[11]Citations to "Feldman Decl." refer to the Declaration of Elise S. Feldman, Esq., in Support of Plaintiffs' Request for a Default Judgment, dated February 16, 2007.

(adding a footnote regarding pro bono representation). In determining the rate that "a paying client would be willing to pay," courts are directed to consider, inter alia:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases . . .

484 F.3d at 166 n.1, 169 (internal citation omitted); see also Warner Bros. Entm't, Inc. v. Carsagno, No. 06 CV 2676, 2007 WL 1655666, at *7 (E.D.N.Y. June 4, 2007) (applying some of these Arbor Hill factors).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono . . . , and other returns (such as reputation, etc.) the attorney expected from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d at 164; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (applying some of these Arbor Hill factors).

In the present case, the Court has balanced the results obtained by counsel with the relative simplicity of a default action such as this, taking into account the skill and experience of

18

the attorneys. In addition, the Court is guided by substantial experience in similar cases to determine what a reasonable client would pay for similar services.

## B. Application

In accordance with N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted contemporaneous billing records setting forth the dates and amount of time during which services were rendered, along with the names of the attorneys and a description of services performed. (Feldman Decl. ¶ 29, Ex. C). Plaintiffs' records indicate that four attorneys worked on this matter. (Id.) According to Ms. Feldman's Declaration, she graduated from law school in 2000, and billed at the rates of $280.00 per hour and $340.00 per hour; Abigail R. Levy graduated from law school in 1997, and billed at the rate of $340.00 per hour; Michael Bauman graduated from law school in 1990 and billed at the rate of $390.00 per hour; and Nathan V. Bishop graduated from law school in 1998 and also billed at the rate of $340.00 per hour. (Id. ¶¶ 29, 30).

Having reviewed the descriptions of the 11.05 hours reflected in the billing records submitted by plaintiffs (Feldman Decl., Ex. C), the Court finds that the time spent on the matter was reasonable. See, e.g., Martone v. HST Roofing, Inc., 2007 WL 595054, at *3 (finding 20 hours of attorney time spent on ERISA default to be reasonable); see also La Barbera v. David Liepper & Sons, Inc., No. 06 CV 1371, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (finding 17.17 hours to be reasonable). However, the rates sought by plaintiffs' counsel are somewhat higher than those awarded by many courts in this district for similar matters. See, e.g., LaBarbera v. On Par Contracting Corp., No. 06 CV 6244, 2007 WL 2362353, at *3 (E.D.N.Y.

Aug. 14, 2007) (finding the rate of $275.00 per hour reasonable in a default ERISA matter); Martone v. HST Roofing, Inc., 2007 WL 595054, at *2-3 (determining that although hourly rates "ranging from $100 for paralegals to $350 for a senior partner" were reasonable in an ERISA action, a rate of $250.00 per hour should be applied to work performed pertaining to a defaulting defendant); Finkel v. Tech Man, Inc., No. 06 CV 2264, 2007 WL 433399, at *4 (E.D.N.Y. Feb. 6, 2007) (finding a rate of $200.00 per hour reasonable in an ERISA default matter for an attorney with approximately six years' experience); LaBarbera v. LES Sub-Surface Plumbing, Inc., No. 03 CV 6076, 2006 WL 3628024, at *8 (E.D.N.Y. Dec. 11, 2006) (reducing $300.00 and $340.00 hourly rates to $250.00 per hour because of the "non-complex" work involved in a default ERISA action). It is therefore recommended that the rate for Mr. Bauman be adjusted to $340.00 per hour, the rate for the time of Mr. Bishop and Ms. Levy be adjusted to $300.00 per hour, and that Ms. Feldman's time be compensated at the rate of $250.00 per hour. The award of attorneys' fees is accordingly adjusted to $2,868.00, by applying the above recommended rates.

Plaintiffs also seek costs and disbursements in the sum of $650.00. They have submitted an invoice dated February 13, 2007, indicating that plaintiffs were charged a total of $300.00 in service of process fees. (Feldman Decl., Ex. D). In addition, plaintiffs seek $350.00 in filing fees. (Id.) The Court has reviewed the records submitted and respectfully recommends that plaintiffs be awarded $650.00 in reasonable costs.

## CONCLUSION

Accordingly, it is respectfully recommended that (1) an Order enter requiring defendant to submit to an audit within 30 days; (2) if defendant complies with the audit, the Court

recommends that there be a further referral to this Court to calculate contributions, interest and liquidated damages based on the audit; (3) if defendant fails to comply with the Order or has failed to maintain the records necessary to perform the audit, then this Court respectfully recommends that plaintiffs be awarded damages in the amount of $35,209.92, representing the delinquent contributions owed; $4,677.54 in prejudgment interest, adjusted to include interest accrued to the date of judgment, $7,041.98 in liquidated damages, $2,868.00 in attorneys' fees, $650.00 in costs, and $432.50 in audit fees.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 6 , 2007

CHERYL L. POLLAK
United States Magistrate Judge

21